**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ------------------------------------------------------ | : | |
| In re | : | Chapter 11 |
| | : | |
| FKF MADISON PARK GROUP | : | Case No. 10-11867 (KG) |
| OWNER, LLC, *et. al.*, | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| ------------------------------------------------------ | : | |
| FLAMINGO, LLC | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adversary No. _____ |
| | : | |
| SLAZER ENTERPRISES OWNER LLC, | : | |
| MADISON PARK GROUP OWNER LLC, | : | |
| JMJS 23rd STREET REALTY | : | |
| OWNER LLC, FKF MADISON GROUP | : | |
| OWNER LLC, 24 EAST 23RD STREET | : | |
| COMMERCIAL LLC, PARK MADISON | : | |
| ASSOCIATES LLC, AND IRA SHAPIRO, | : | |
| | : | |
| Defendants. | : | |
| ------------------------------------------------------ | | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiff, Flamingo, LLC, alleges:

<u>Parties</u>

1.      Plaintiff Flamingo, LLC ("Flamingo") is a New York limited liability company.

2.      Defendant Slazer Enterprises Owner LLC ("Slazer Owner") is one of the debtors in this bankruptcy case.

3.      Defendant Madison Park Group Owner LLC ("Madison Park") is one of the debtors in this bankruptcy case.

4.      Defendant JMJS 23rd Street Realty Owner LLC ("JMJS") is one of the debtors in this bankruptcy case.

5.      Defendant FKF Madison Group Owner LLC ("FKF Madison") is one of the debtors in this bankruptcy case.

6.      Defendant 24 East 23rd Street Commercial LLC ("24 East 23rd Street") is a New York limited liability company having an address at 230 Congers Road, New City, New York 10956.

7.      Defendant Park Madison Associates LLC ("Park Madison Associates") is a New York limited liability company having an address at 230 Congers Road, New City, New York 10956.

8.      Defendant Ira Shapiro ("Shapiro") is an individual residing in New York.

## Jurisdiction and Venue

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1334(b).

10.     Plaintiffs' claims are core.

11.     Venue is proper in this District under 28 U.S.C. § 1409(a).

## Common Averments

12.     Flamingo owns the property and building located at 26 East 23rd Street, New York, New York (the "Flamingo Property"), which is the subject of this action.  The Flamingo Property is the only piece of commercial real estate owned by Flamingo.

13.     Flamingo has been the owner of the Flamingo Property since 2005.  The sole member of Flamingo, Abe Shrem ("Shrem"), owned the Flamingo Property with his mother,

Rose Shrem, jointly from 1981 to 1989 and then alone from 1989 to 1995. In 1995, Shrem transferred the Flamingo Property to Flamingo.

14. Shrem is the managing member of Flamingo. The other three members are his daughters.

15. From approximately 1990 to 2008, the Flamingo Property was operated by Wendy's as a fast food restaurant, pursuant to a 1990 Lease between Wenco Food Systems Corp., the predecessor-in-interest to Wendy's, and Shrem, as predecessor-in-interest to Flamingo (the "Wendy's Lease").

16. The Wendy's Lease was a triple-net lease, making Wendy's responsible for all aspects of running the building. Thus, Shrem rarely traveled to Manhattan from his house in Long Island to deal with issues related to the Flamingo Property.

17. In 2005, Shrem was contacted by a real estate broker representing an entity called 23rd Street LLC, about selling the development or "air rights" associated with the Flamingo Property. Flamingo sold "air rights" to 23rd Street, LLC on February 6, 2006 for use on 23rd Street LLC's property. 23rd Street LLC subsequently transferred its property and the air rights it acquired from Flamingo to entities controlled by Shapiro.

18. In 2007, Shapiro approached Shrem about Flamingo selling the Flamingo Property to Slazer Owner, FKF Madison, Madison Park, JMJS (the "Debtors") and another entity called 2623 Place LLC ("2623 Place"), which was also controlled by Shapiro (for ease of reference, the Debtors and 2623 Place will collectively be referred to herein as the "Purchasers").

19. The Debtors were entities involved in building and developing a fifty-story condominium tower on the lot adjacent to the Flamingo Property (the "Project"). Shapiro explained that the Purchasers wanted to buy the Flamingo Property in order to be able to provide a location for a McDonald's restaurant that had occupied the location on which the Project was

being built.  After some discussion and negotiation, on November 20, 2007, Flamingo entered

into a contract (the "Contract") to sell the Flamingo Property to the Purchasers for $13,750,000.

20.     The Purchasers were scheduled to close on the sale of the Flamingo Property on

or about December 10, 2007 (the "original closing date").

21.     During the negotiations for the sale of the Flamingo Property, Shapiro approached

Wendy's about terminating the Wendy's Lease and vacating the Flamingo Property.  After the

Contract was signed, the Purchasers entered into an agreement with Wendy's to vacate the

Flamingo Property and to terminate the Wendy's Lease upon the closing of the sale of the

Flamingo Property to the Purchasers.  Flamingo objected to this agreement and notified Wendy's

in writing that Flamingo did not consent to Wendy's taking any action that could be considered

to be a termination of its obligations under the Wendy's Lease.  Despite such notice and the

closing on Flamingo's sale of the Property not having occurred, Wendy's then closed its

restaurant and vacated the Flamingo Property upon receiving $2,250,000.00 from the Purchasers.

22.     The original closing date of the sale of the Flamingo Property to the Purchasers

was postponed to January 10, 2008 at the request of Shapiro acting on behalf of the Purchasers.

23.     The January 10, 2008 closing date was postponed as well, again at Shapiro's

request.

24.     The next scheduled closing date was also postponed at the request of the

Purchasers.  Nevertheless, Shapiro, on behalf of the Purchasers, made numerous representations

that the closing would go forward.

25.     For the next eighteen months, the closing date for the sale of the Flamingo

Property continued to be postponed by the Purchasers.  Upon each extension, the Purchasers paid

to Flamingo an extension fee that approximated the rent that Wendy's would otherwise have

paid. Under these circumstances, Shrem had no reason to visit the Flamingo Property or otherwise inquire as to Shapiro's activities.

26.     In early 2008, after the closing had been adjourned, Shapiro, through an entity named Slazer Enterprises, LLC ("Slazer"), entered into an agreement with a construction company named Enscon Corporation to act as a general contractor to "renovate" the Flamingo Property.

27.     Slazer is the sole member of Slazer Owner, one of the Debtors (and Purchasers).

28.     In the contract with Enscon and all subsequent dealings with Enscon as well as in its dealings with others, Shapiro represented that Slazer was the owner of the Flamingo Property. These representations were made without the knowledge, authorization or consent of Flamingo.

29.     Unbeknownst to Shrem, renovation and demolition work on the Flamingo Property then took place from March 2008 to January 2009.

30.     The demolition consisted of removing two stories (from what was originally four stories) from the Flamingo Property, effectively reducing the square footage of the Flamingo Property by 50%.

31.     In addition, all the interior fixtures, finishes, walls, and floors were removed. As a result of the demolition, and Shapiro's apparent failure to make full payment to the contractors, several mechanic's liens are attached to the Flamingo Property, including one filed by Enscon under which Enscon has now commenced litigation in New York State Court against Flamingo and Slazer to foreclose the lien.

32.     After the demolition work had been performed on the Flamingo Property, and without Flamingo's knowledge or approval, a document was filed with the New York City Department of Finance Office of the City Register on June 5, 2009 which falsely stated that Flamingo had given the Purchasers and another entity controlled by Shapiro, Park Madison

Associates, an easement permitting the installation of a flue duct on the roof of the Flamingo Property in order to serve the boilers for the Project (the "Easement"). The Easement, dated April 28, 2009 and purportedly signed by Abe Shrem on behalf of Flamingo on May 26, 2009, had never been agreed to or even seen by Shrem, and Shrem's signature was forged. The Easement is signed by Ira Shapiro on behalf the Purchasers, which include all the Debtors in this action. The Easement is attached as Exhibit A.

33.     As part of the unauthorized work on the Flamingo Property, the Debtors built what appears to be a large flue duct to vent the heating system for the Project that extends over the roof of the Flamingo Property and rests on a support structure that was built on the roof of the Flamingo Property (the "Encroaching Structures"). A set of photographs showing the flue Encroaching Structures are attached to this complaint as Exhibit B.

34.     The Encroaching Structures are the items that the Easement purports to have authorized to be installed on the roof of the Flamingo Property.

35.     Shrem did not authorize this construction on the roof of the Flamingo Property and was unaware that it was taking place.

36.     The Encroaching Structures remain on the roof of the Flamingo Property.

37.     During the time period when the Encroaching Structures were being placed on the Flamingo Property, Shrem still believed that the Purchasers intended to close on the Flamingo Property and as a result, he had no reason to visit the Flamingo Property.

38.     In approximately July of 2009, as it was becoming increasingly clear to Flamingo that the Purchasers may not close on the Contract, McDonald's initiated direct negotiations with Flamingo about buying the Flamingo Property for itself.

39.     At a meeting to discuss this possibility, representatives of McDonald's presented a title report for the Flamingo Property that showed that the Easement was on file. The

negotiations with McDonald's continued for several weeks and since McDonald's was not concerned with the Easement, no action was taken by Flamingo to challenge the Easement.

40.     In the fall of 2009, negotiations with McDonald's came to an end. At that time, a demand was made on Flamingo's behalf to the Purchasers that the Easement be terminated and that the Encroaching Structures be removed from the roof of the Flamingo Property.

41.     After extensive negotiations, Flamingo and the Purchasers entered into a "Termination of Easement Agreement," dated December 1, 2009 (the "Termination Agreement) in which Shapiro, on behalf of the Purchasers, Park Madison Associates, and the Board of Managers of One Madison Park Condominiums agreed that the Easement had not been agreed to by Flamingo and was terminated. A copy of the Termination Agreement is attached as Exhibit C.

42.     However, at that time, Shapiro failed to execute the necessary transfer tax documents (the "ACRIS Forms") that would allow Flamingo to file the Termination Agreement with the Department of Finance in order to expunge the Easement. In addition, at the same time, Flamingo and the Debtors negotiated a Repair Agreement under which the Debtors and the Condominium Association agreed to remove the Encroaching Structures from the roof of the Flamingo Property and also agreed to restore the Flamingo Property to its previous four floors.

43.     Even after the execution of the Termination Agreement and the negotiation of the Repair Agreement, Shapiro continued to assure Shrem that Purchasers intended to purchase the Flamingo Property. Given that the Flamingo Property had been cut in half and gutted, and that Wendy's had vacated the Flamingo Property, Shrem believed that selling the Flamingo Property to the Purchasers for McDonald's use remained Flamingo's best option.

44.     When the Purchasers had not scheduled a new closing date by the beginning of February, on February 11, 2010, Flamingo notified the Purchasers that it was terminating the sale contract for the Flamingo Property and that it considered the deposit to be forfeited.

45.     On March 4, 2010, iStar commenced its foreclosure proceeding against Debtors in New York State Court.  Flamingo was named as a defendant in that action because the Debtors had also entered into contracts with Flamingo to purchase certain units in the Condominium Project as partial consideration for the purchase of the Flamingo Property.  A receiver for the Project was appointed by the New York court on April 15, 2010.

46.     Sometime before it responded to iStar's complaint, Flamingo, through counsel, met with counsel for iStar and counsel for McDonald's about the various issues between the Condominium Project and Flamingo, including the fact that the improper Easement and unauthorized structure on the roof of the Flamingo Property needed to be removed.   As these discussions continued, Flamingo extended its time to respond to the Complaint.

47.     The involuntary bankruptcy petition against Debtors was filed in this Court on June 8, 2010.  At that point, the foreclosure proceeding was stayed and the Court directed that no further pleadings be filed.

48.     At that point, Flamingo began to consider other options for the Flamingo Property.  In June 2010, it made a demand that Wendy's take responsibility for the Flamingo Property under the Wendy's Lease.  Sometime in August, Wendy's indicated that it would not voluntarily undertake its responsibilities under the Wendy's Lease.

49.     Flamingo then began efforts to market the Flamingo Property to prospective purchasers or lessees.  At that point, Shrem sought access to the Flamingo Property and saw that access was barred by a construction fence that surrounded the Flamingo Property and was locked.  The photographs attached as Exhibit B show the fence and the padlock.

50. On inquiry, Shrem learned that the fencing had been constructed by Debtors and unsuccessfully attempted to obtain a key from personnel associated with the Project. At that point, counsel to Shrem corresponded with the Receiver appointed by the State Court and was told that the bankruptcy stay prohibited him from taking any action with respect to the Project or the Flamingo Property.

51. Shrem then contacted Shapiro who promised Shrem that he would obtain a key for Shrem. No key was provided until November 2010.

52. As part of the discussions between Shrem and Shapiro, Shrem raised the issue of the ACRIS Forms that Shapiro had failed to execute at the time he signed the Termination Agreement. Shrem explained that the ACRIS Forms needed to be filed in order for the Easement to be expunged from the Department of Finance records and therefore from the title for the Flamingo Property. Shapiro then executed the ACRIS Forms on December 15, 2010. However, in light of the proceedings in this Court, Flamingo has not filed the ACRIS Forms with the Department of Finance. A copy of the executed ACRIS Forms are annexed hereto as Exhibit D.

53. Flamingo has been in negotiation with a prospective buyer of the Flamingo Property for the past month or so. One of the obstacles to the sale is the prospective purchaser's insistence that the Easement be removed from the title to the Flamingo Property and that the structure be removed from the roof of the Flamingo Property.

### Count I - Cancellation or Termination of the Easement

54. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-53 as though fully set forth herein.

55. The Easement that is currently on file with the New York City Department of Finance Office of the City Register was not agreed to by Flamingo nor was it executed on behalf

of Flamingo by Shrem, the only person authorized to sign on behalf of Flamingo.  Instead, a signature purporting to be Shrem's was placed on the document without Shrem's knowledge or authorization.

56.    As a result, the Easement is invalid and cannot create any right for the Debtors or any other person or entity with ownership rights in the Project to encroach in any way on the property of Flamingo.

57.    Under these circumstances, the Easement is subject to cancellation or termination as a matter of law.

58.    Plaintiff seeks a judicial determination that the Easement is invalid and that Debtors or anyone acting in concert with Debtors have no right to encroach upon the Flamingo Property.

### Count II - Approval of Termination Agreement and Filing of ACRIS Form

59.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-58 as though fully set forth herein.

60.    On December 1, 2009, the Debtors and the other purported owners of the Project, through Shapiro, executed the Termination Agreement that acknowledged that the Easement was not authorized by Flamingo and should be terminated.

61.    At that time, Shapiro did not sign the ACRIS Form that was required to be filed in order to expunge the Easement.  Then, on December 15, 2010, after the filing of this Bankruptcy proceeding, Shapiro, purporting to act for the Debtors and others, executed the ACRIS Forms and gave them to Shrem for filing.  The forms have not been filed to date.

62.    In light of the invalidity of the Easement, and the Debtors' execution of the Termination Agreement, Plaintiff requests a declaration from this Court that it can file the

ACRIS Form signed by Shapiro, or alternatively, that this Court authorize another representative of the Debtors to sign the ACRIS Form so that Flamingo can file the Termination Agreement and expunge the Easement.

<u>**Count III - Removal of the Encroaching Structures and**</u>
<u>**Rebuilding Two Floors of the Flamingo Property**</u>

63.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-62 as though fully set forth herein.

64.     The Encroaching Structure is attached to and extends over the roof of the Flamingo Property and was placed there without the knowledge or consent of Flamingo.

65.     The Encroaching Structure is preventing Flamingo from receiving the full use and enjoyment of its rights in the Flamingo Property, including but not limited to rebuilding the two floors of the Flamingo Property that were improperly removed by Shapiro and the Debtors.

66.     Thus, Flamingo seeks a judicial declaration that it can remove the Encroaching Structure from the Flamingo Property and rebuild the two floors of the Flamingo Property that were removed by Shapiro and the Debtors.

*[Remainder of page intentionally left blank]*

WHEREFORE, Plaintiffs request a judgment awarding the following relief:

(a)     on Count I, a determination that the Easement is invalid;

(b)     on Count II, a determination that the Termination Agreement is valid and

Shapiro had authority to sign the ACRIS form on behalf of the Debtors.

(c)     on Count III, a determination that Flamingo may remove the Encroaching

Structures from the Flamingo Property.

Dated: March 28, 2011

Respectfully submitted,

**DRINKER BIDDLE & REATH LLP**

*/s/ David P. Primack*
David P. Primack (DE 4449)
1100 N. Market Street, Suite 1000
Wilmington, DE  19801-1254
Telephone: (302) 467-4200
Facsimile:  (302) 467-4201

Counsel for Plaintiff